JAMES ORMISTON, APPELLANT, v. HORATIO J. OLCOTT, RESPONDENT.

*Trustee—cannot invest in bonds and mortgages on land out of the State—liability of, for accepting unauthorized securities from solvent estate of deceased co-trustee.*

A trustee cannot invest the trust funds in bonds and mortgages on real property situated out of this State, unless expressly authorized so to do by the court, or by the instrument creating the trust.

Where a trustee takes from the solvent estate of a deceased co-trustee, in whose hands the funds of the estate have been left, unauthorized securities, instead of money, he stands in the same position as if he had himself invested the funds of the estate in such securities, and is responsible for any loss that the estate may sustain thereby.

APPEAL from a decision of the surrogate of the county of Otsego, rendered on the petition of the appellant.

Robert Ormiston died, leaving a last will and testament, which was duly admitted to probate by the surrogate of Otsego county, on December 4, 1842, wherein he devised and bequeathed his residuary estate, both real and personal, to William M. Oliver, Oliver A. Morse and Horatio J. Olcott, as executors and trustees therein named, in trust, to apply the income and interest arising therefrom, to the benefit of his son, James Ormiston, the appellant herein, and his wife, during their lives, and during the life of the survivor of them,

and at their decease, to pay over the principal to the grandchildren of the testator. Letters testamentary were granted to the said Oliver, Morse and Olcott, and they took upon themselves the execution of the trust on December 4, 1842. William M. Oliver died in the year 1863, and Oliver A. Morse in the year 1870.

On the petition of Horatio J. Olcott, sole surviving trustee, to the surrogate of the county of Otsego, for an accounting, such proceedings were had in the Surrogate's Court, that a decree was made therein, which recites that " there still remains in the hands of said executor and trustee, the sum of $11,071.09, which said sum the said executor and trustee is hereby ordered and directed to retain and properly invest in good securities, and pay the income arising therefrom, annually, on the first of April in each year, to James and Agnes Ormiston, according to the provisions of the said last will and testament, and after the decease of said James and Agnes Ormiston, he is directed to pay said principal sum to the parties entitled thereto by the provisions of said last will and testament."

Olcott did not pay the interest or income due April 1, 1879, except the sum of $200, paid during the year 1878, leaving about $400 due at that date, which was duly demanded on April 1, 1879, and payment thereof refused by him.

Thereupon, and in the months of May and June, 1879, petitions were filed by the *cestui que trust*, James Ormiston, before the surrogate of the county of Otsego, praying for an order that the said trustee show cause why he should not pay to the petitioner the amount due April 1, 1879.

The answer of the said trustee to the said petition and the order thereon granted, is in substance that the said Morse, in his lifetime had sole charge of the trust funds. That he mingled them with his own funds. That after the death of the said Morse, this trustee took, in the exercise of his discretion, a bond of parties in Toledo, State of Ohio, and a mortgage on lots in said city and State, payment of which was guaranteed by Anna Morse, sole legatee of Oliver A. Morse, who was then solvent, Morse's estate being then perfectly responsible. That at the time he took the mortgage the value of the premises covered thereby was, in the opinion of competent experts, greatly in excess of the amount secured thereby.

That he took the mortgage in good faith and in the full belief that it was the best arrangement he could make.

The surrogate decided that, the "mortgagors named in said mortgage have become insolvent, and that said trustee believed it was not good policy or for the interest of said fund to foreclose said mortgage, and that by reason of his not having received any income or interest from said fund, he has not been able to pay over any interest or income due April 1, 1879."

It was therefore "ordered that the prayer of the petitioner be denied, and that said Olcott is not guilty of such wrong-doing or neglect of duty as renders him personally liable for any loss from his inability to collect the said mortgage or the interest thereof."

*H. Sturges*, for the appellant. The taking of the bond and mortgage was unauthorized, and renders the trustee personally responsible. The trustee can only protect himself by making investments recognized by the law and the rules and practice of the court. Perry on Trusts, 453; *Stiles* v. *Beeman*, 1 Lans., 90; *Stuart* v. *Stuart*, 3 Beav. 430; Lewin on Law of Trusts, 6 ed., 290; *Exp. Copeland*, Rice Eq., [S. C.,] 69; *Matter of Rush*, 12 Penn. 378; *King* v. *Talbot*, 50 Barb., 453–483; *Ackerman* v. *Emmett*, 4 Barb., 626; *King* v. *Talbot*, 40 N. Y., 76; Hill on Trustees, 370.)

*Samuel A. Bowen*, for the respondent.

BOCKES, J. :

At the death of Mr. Morse there was no investment specifically belonging to the trust. The estate of Mr. Morse was solvent. It was the duty, therefore, of the surviving trustee, Mr. Olcott, to require from the estate of Mr. Morse payment in cash of the amount owing to the trust, or the delivery of securities to that amount, of the kind in which trustees may invest. The acceptance of the Toledo securities was, therefore, a voluntary act of Mr. Olcott, by which he placed the trust estate in that kind of investment.

We do not think that a trustee is allowed to invest in bond and mortgage out of the State. Certainly, not without express authority by the court or by the instrument creating the trust. So the rule has always been understood; and the rapid growth of new and

slightly settled States is no reason for relaxing the rule, but rather for adhering to it more firmly. Treating, then, the acceptance of the Toledo bond and mortgage as practically an investment made by Mr. Olcott, we think it was unauthorized.

If the *cestui que trust*, being of full age and in a condition to understand his rights, had approved the act when it was done, or, perhaps, afterwards, this might have relieved the trustee. But we see no sufficient evidence of this. Mr. Olcott made a voluntary accounting before the surrogate. In that account he states how the funds are invested. But in the decree of the surrogate, made thereupon, there is no recognition or approval of the investment. The surrogate therein finds that Mr. Olcott has a certain sum in his hands, which he orders him to retain and properly invest in good and sufficient securities. Now, if anything is to be inferred from that decree in regard to the Toledo bond, it is that the surrogate, on the hearing of all parties, would not approve of the investment, but would only determine the amount in Mr. Olcott's hands, and direct him to invest that amount properly. This is the more reasonable view, since it now appears that Mr. Olcott had, in addition to the Toledo bond and its collaterals, the personal obligation of the residuary legatee of Mr. Morse, a person then solvent.

We have no reason to doubt that, in taking the Toledo bond, Mr. Olcott acted in good faith. If the estate of Mr. Morse had been insolvent, it might have been a proper act for Mr. Olcott to take the best securities which he could get, even though they were not of the kind in which trustees may invest.

We think that the order or decree or the surrogate should be reversed, with costs, and the prayer of the petition granted, the form of the proper order to be settled by Judge BOCKES.

LEARNED, P. J., and WESTBROOK, J., concurred.

Order reversed, with $10 costs, and disbursements; prayer of petitioner granted; order to be settled by BOCKES, J.